IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**Cheryl Dumas Coleman,**         :

    **Plaintiff,**         :

                                        Case No. 3:19-cv-00373-TPK

vs.         :

**Andrew Saul,**         :         **Magistrate Judge Kemp**
**Commissioner of**
**Social Security,**         :

    **Defendant.**         :

**OPINION AND ORDER**

    Plaintiff Cheryl Dumas Coleman filed this action seeking review of a final decision of the Commissioner of Social Security. That decision, issued by the Appeals Council on October 21, 2019, denied her applications for social security disability benefits and supplemental security income. Plaintiff filed a statement of errors on March 16, 2020 (Doc. 9) to which the Commissioner responded on May 28, 2020 (Doc. 13). The parties have consented to final disposition of this case by a United States Magistrate Judge. For the following reasons, the Court will overrule Plaintiff's statement of errors and direct the Clerk to enter judgment in favor of the Commissioner.

**I.  INTRODUCTION**

    Plaintiff protectively filed her applications on October 30, 2015, alleging that she became disabled on that day. After initial administrative denials of her claims, Plaintiff appeared at a hearing held before an Administrative Law Judge on March 1, 2018. A vocational expert, Charlotta J. Ewers, also testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on August 8, 2018. In that decision, he first found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2022, and that she had not engaged in substantial gainful activity since her alleged onset date. The ALJ next concluded that Plaintiff suffered from severe impairments including cervical degenerative disc disease, carpal tunnel syndrome, bilateral knee arthritis, diabetes mellitus with neuropathy, stage 3 chronic kidney disease, hypertension, right eye glaucoma, and anxiety. However, the ALJ also found that none of these impairments, taken singly or in combination, met the criteria for disability found in the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff

could perform a reduced range of light work. He concluded that Plaintiff was capable of the exertional demands of light work but had to alternate between sitting and standing every 20 minutes while at the work station. She could frequently stoop, kneel, crouch, crawl, climb ramps and stairs, reach in all directions, and handle and feel objects with her bilateral upper extremities. She could never climb ladders, ropes, or scaffolds and could perform only moderately complex tasks and not at a production pace. Lastly, she could tolerate only occasional (3 to 4 times weekly) changes in a routine work setting.

The ALJ determined that with these limitations, Plaintiff could not perform her past relevant work as a child monitor, home health aide, nurse assistant, and fast food worker. At the hearing, the vocational expert testified that someone with the residual functional capacity determined by the ALJ could do certain light jobs including mail clerk, marker, and electronics worker. The ALJ accepted this testimony as well as the testimony that these jobs exist in significant numbers in the national economy. As a result, he concluded that Plaintiff was not disabled within the meaning of the Social Security Act.

In her statement of errors, Plaintiff raises two issues. First, she asserts that the ALJ erred by failing to consider her obesity or to assess its impact on her ability to work. Second, she contends that the ALJ did not properly evaluate the medical source opinions and medical evidence.

## II. STANDARD OF REVIEW

As this Court said in *Jeter v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5587115, at *1–2 (S.D. Ohio Sept. 18, 2020),

> Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.' " *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers,* 582 F.3d at 651 [quotations and citations omitted].

### III. FACTUAL BACKGROUND

The Court will begin its review of the factual background of this case by summarizing the testimony given at the administrative hearing. It will then recite the pertinent information found in the medical records.

Plaintiff, who was 53 years old at the time of the hearing, first testified that she lived by herself in a one-floor apartment. She could drive but had some difficulty turning her head. She drove herself to work two days per week and walked the other three days. However, her feet burned due to her neuropathy, and her knees hurt as well. She had a high school education and some vocational training as well, earning certification as a nursing assistant. Her past work included watching children in her home, being a home health aide, working in a fast food restaurant, and working as an aide in a nursing home. At the time of the hearing, she was working part-time with Senior Resource Connection as a home health aide.

Next, Plaintiff was asked about her various impairments. She said that she stopped working full-time in 2015 due to neck problems as well as neuropathy in her feet and hands and sharp pains in her knees. Her neck pain caused headaches and dizzy spells and her neuropathy, especially in her feet, worsened as the day went on. She also had difficulty raising her arms above her head and suffered from acid reflux which sometimes caused diarrhea. Plaintiff also said she took medication for anxiety which was intended to help her sleep and to combat the neuropathic pain.

In terms of everyday activities, Plaintiff said she had some difficulty showering and she had help with household chores, although she did some housecleaning and cooked and washed dishes. She could shop for groceries using a motorized cart. Her leisure activities included playing cards and watching television. She was able to sit for an hour at a time but could stand very little and could walk only next door. She tried not to lift over ten pounds and had trouble lifting objects because her hands locked up due to trigger finger. Plaintiff also said that she had undergone carpal tunnel surgery and suffered from chronic kidney disease, and that she experienced panic attacks and depression on a very occasional basis.

The vocational expert, Ms. Ewers, first testified about Plaintiff's past work. She said the

jobs ranged in exertional level from light to medium as performed in the national economy and were either unskilled or semi-skilled.  If Plaintiff were limited to light work with a number of physical limitations (not including a sit/stand option), she could still be a fast food worker but could not do her other past jobs.  A sit/stand option would eliminate that position, however.  The expert then identified mail clerk, marker, and electronics worker as jobs which could be done even with that additional limitation, and testified that those jobs could still be performed even if the person doing them was restricted to the performance of only moderately complex tasks not done at a production pace and in a work setting that changed only occasionally.  Being off task for 15% of the time was not compatible with working, however, nor were there light jobs available to someone who had to sit for ten minutes out of every 20 minutes or who could not use her arms for work activity.

   The pertinent medical records show, first, that Plaintiff reported shoulder pain even before she stopped working on a full-time basis.  An examination in early 2015 showed a full range of motion, however, with some muscle spasms noted.  She was also receiving treatment for various other conditions including diabetes, acid reflux, hypertension, and kidney disease as well as carpal tunnel syndrome.  Late in 2015, her treating physician, Dr. Wozniak, said that she would have trouble using her arms for long periods of time and that long-term sitting was also problematic due to her spine issues.  (Tr. 459-60).  On June 30, 2016, Dr. Wozniak amplified her opinion, noting that Plaintiff's most serious problem was cervical spinal central compression at C4-5 and C5-6 as demonstrated on an MRI, leading to decreased range of motion and increased pain and stiffness.  She was also having problems with shoulder movement and manual dexterity and was "limited to standing, or sitting too long" and required breaks at work.  (Tr. 557).

   Dr. Danopulos performed a consultative physical examination on May 8, 2016.  At that time, Plaintiff's major complaints were pain in her fingers, knees, neck, and left hip.  On examination, she had some pain in her right knee and left hip, but the findings were otherwise essentially normal.  Dr. Danopulos concluded that Plaintiff's "main somatic complaints are restricted to exogenous versus morbid obesity, well controlled diabetes, and suggested fast heart rate when she is active, which practically do not interfere with a semi sedentary life."  (Tr. 546).

   Subsequent medical records show that Plaintiff received treatment for a variety of physical ailments including multiple trigger digits, a rotator cuff tear, diabetes, chronic kidney disease, glaucoma, chronic diarrhea, a sleep disorder, bilateral knee pain, and peripheral neuropathic pain.  Her knee pain had improved temporarily with injections but x-rays showed bone-on-bone arthritis.  She underwent injections for trigger digits as well and had carpal tunnel surgery.  She was also prescribed multiple medications for her various conditions.

   Lastly, two state agency physicians (both named Dr. Lewis) expressed opinions as to Plaintiff's residual functional capacity.  Both believed she could perform a limited range of light work, with the latter Dr. Lewis concluding that she had somewhat more ability than the former.

## IV.  DISCUSSION

### A.  Obesity

As noted, Plaintiff takes issue with the way in which the ALJ did (or did not) take her obesity into account.  She acknowledges that an ALJ is not required to follow any particular method of analyzing obesity, but notes that it still must be considered to the extent that it aggravates limitations caused by other severe impairments.  Here, she points out that her BMI was 41.1, which falls into the category of "morbidly obese," and argues that the ALJ did not determine how her weight affected her shoulder and neck pain or her ability to do the walking and standing required by light work activity as well as other postural activities like stooping, kneeling, crouching, crawling, and climbing ramps and stairs. The Commissioner responds that although the ALJ did not specifically mention obesity beyond finding it to be a severe impairment, he fulfilled his legal duty to consider it by evaluating multiple medical opinions which did discuss obesity explicitly, including the opinion of Dr. Danopulos and the opinion of state agency physician Dr. Elaine Lewis, who related various postural limitations to Plaintiff's obesity.

> The Court of Appeals has said that
>
> an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.,* 359 Fed.Appx. 574, 577 (6th Cir. 2009). "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02–1P, 2002 WL 34686281, at *2. It must be considered throughout the ALJ's determinations, "including when assessing an individual's residual functional capacity," precisely because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02–1p, 2002 WL 34686281, at *1. The ALJ is not required to use any "particular mode of analysis" in assessing the effect of obesity. *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411–12 (6th Cir. 2006).

*Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015).  Amplifying the concept that no particular mode of analysis is needed, the Court of Appeals has also held that reliance on medical opinions that account for a claimant's obesity may satisfy the regulatory requirement that the effects of obesity be considered, noting in *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010) that "by utilizing the opinions of these physicians [who considered the claimant's obesity] in fashioning Coldiron's RFC, the ALJ incorporated the effect that obesity has on the claimant's ability to work into the RFC he constructed."

The key to whether an ALJ has erred in his treatment of a claimant's obesity is, of course, determining if that impairment could have affected the claimant's ability to perform work-related functions in a way that the ALJ did not fully consider.  Here, Plaintiff has not pointed to any

additional work-related limitations arising from her obesity that, in her view, the ALJ improperly disregarded. Plaintiff did not testify that her obesity made it harder for her to perform various work-related activities above and beyond the effects of her arthritic knees and her neuropathy. Dr. Elaine Lewis, the first of the two state agency physicians, specifically stated that she took Plaintiff's obesity into account in imposing certain postural limitations (Tr. 80). And the ALJ found that Dr. Lewis actually overstated the extent to which Plaintiff could tolerate sustained work activity, imposing a sit/stand option based on additional information not available to Dr. Lewis. Consequently, although it would have been preferable had the ALJ made his consideration of obesity more explicit, it cannot be said either that he disregarded that impairment in crafting a residual functional capacity or that the record suggests additional limitations arising from Plaintiff's obesity that call into question the accuracy of the ALJ's residual functional capacity determination. Under these circumstances, Plaintiff's first claim of error does not support an order of remand.

### B. Medical and Opinion Evidence

In her second assertion of error, Plaintiff focuses on the way the ALJ treated the opinion of Dr. Wozniak, which, Plaintiff argues, is fully consistent with the relevant medical evidence. She also faults the ALJ for purporting to accept Dr. Danopulos's opinion when, she contends, his statement that Plaintiff's impairments would not interfere with a semi-sedentary life do not support a finding that she could do light work. In response, the Commissioner argues that the ALJ was entitled to conclude that some of Dr. Wozniak's observations were too vague - particularly those relating to sitting and standing - and that the treatment notes confirm the ALJ's decision to assign less than controlling weight to Dr. Wozniak's expressed limitations on Plaintiff's ability to use her hands and arms. The Commissioner also asserts that Dr. Danopulos did not confine Plaintiff to sedentary activity and that allowing Plaintiff to alternate positions in a workday is encompassed within the meaning of the phrase "semi sedentary."

When evaluating the opinion evidence, the ALJ assigned great weight to Dr. Danopulos's opinion, noting that it was consistent with the opinions of two state agency physicians (both of whom believed that Plaintiff could perform a reduced range of light work) and with the history of conservative medical treatment demonstrated in the medical record. The ALJ also found that it corresponded to Plaintiff's daily activities including cooking, doing housework, shopping, and driving. He assigned partial weight to the state agency reviewers' conclusions as well, but found that they overstated Plaintiff's work-related abilities. Finally, he gave only partial weight to Dr. Wozniak's opinion, reasoning that it contained no function-by-function assessment of her capabilities and that Dr. Wozniak's conclusion as to Plaintiff's ability to reach, handle, and finger were not supported by the medical evidence, which the ALJ characterized as containing mostly "benign physical examination notes...." (Tr. 23).

Part of Plaintiff's claim is that the opinion of a treating source was improperly discounted. As this Court has said about such a claim (construing the applicable regulations as they applied to claims filed prior to 2017),

> a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. § 404.1527(c); *see also Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983); *Estes v. Harris*, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. *Moon v. Sullivan,* 923 F.2d 1175 (6th Cir. 1990); *Loy v. Secretary of HHS*, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

*Morris v. Comm'r of Soc. Sec.*, 2016 WL 6574158, at *4 (S.D. Ohio Nov. 7, 2016), *report and recommendation adopted,* 2017 WL 1287146 (S.D. Ohio Apr. 6, 2017).

Turning first to the way in which the ALJ analyzed Dr. Danopulos's opinion, the Court finds that the ALJ's construction of that opinion, while it may not be the only conclusion which could be drawn, is nonetheless a reasonable one. The term "sedentary" does connote being seated most of the time; under Social Security regulations, it is defined as applying to work which involves at least six hours of sitting and no more than two hours of standing or walking in a workday. *See, e.g.,* SSR 83-10. Clearly, it is reasonable to interpret "semi sedentary" as meaning a greater tolerance for standing and walking than a purely sedentary lifestyle would involve. The ALJ reached this conclusion, finding that Plaintiff could engage in activity which allowed her to alternate frequently between sitting and standing, and that is reasonably consistent with both Dr. Danopulos's phrasing and the balance of his findings, none of which showed extreme abnormalities. Coupled with similar opinions rendered by the state agency physicians, the ALJ had a reasonable basis for concluding that Dr. Danopulos had not limited Plaintiff to only sedentary work and that his opinion provided support for the ALJ's residual functional capacity finding.

As to the ALJ's partial rejection of Dr. Wozniak's opinion, it is true, as Plaintiff points out, that not all of Dr. Wozniak's findings are vague and fail to address Plaintiff's abilities on a function-by-function basis. But that is not the only reason given by the ALJ for discounting her opinion. The ALJ accurately noted that Dr. Wozniak did not provide any specific views about how long Plaintiff would be able to sit, stand, or walk during the workday. He then rejected her conclusions about Plaintiff's limitations in reaching, handling, and fingering as unsupported by the medical evidence. An objective review of that evidence reveals little support for significant

limitations on the use of the arms, hands, and fingers.  Plaintiff was treated for various conditions but the notes show that surgeries and injections improved her functioning, and she was still able to work part-time and do various household chores which involved the use of her arms and hands.  Again, there were other opinions suggesting much more modest limitations on those abilities, and the ALJ provided a sufficient explanation for crediting those opinions over that of Dr. Wozniak.  All in all, this second claim of error similarly provides no basis for the issuance of an order remanding the matter to the Commissioner for additional proceedings.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **OVERRULES** the statement of errors (Doc. 9) and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

 /s/ **Terence P. Kemp**
**Terence P. Kemp**
**United States Magistrate Judge**